Michael P. VAUGHN, Present Trustee of the Meatcutters Local 576, Cindi S. Nance, Present Trustee of the Meatcutters Local 576; Mike Craig, Present Trustee of the Meatcutters Local 576; Lynn Nutt, Present Trustee of the Meatcutters Local 576; W.W. Walderbach, Present Trustee of the Meatcutters Local 576; Lawrence S. Jenkins, Present Trustee of the Meatcutters Local 576; Employers Kansas and Missouri Pension Plan; Patricia Scott, Trustee of Pension Plan; James G. Sheehan; Appellees,

v.

Ronald E. SEXTON, individually and in his representative capacities as Statutory Trustee of Franklin Investment Group, Ltd., Statutory Trustee of KALCO, Inc., Statutory Trustee of SLC of North America, Inc., Trustee of Sexton Family Trust, Statutory Trustee of Kalco–Illinois, Inc., Jacpad Corporate Financial Services, Inc., Barclays Leasing Ltd., Commonwealth Leasing Corporation and Congressional Insurance Agency Incorporated, Appellant.

No. 91–3145.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1992.

Decided Sept. 14, 1992.

James Borthwick, Kansas City, Mo., argued (Sally B. Surridge, on the brief), for appellant.

Linda Kay Knight, Kansas City, Mo., argued, for appellees.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and ARNOLD,* District Judge.

MORRIS SHEPPARD ARNOLD, District Judge.

In April, 1983, Williams Meat and Wilson Foods, its corporate parent, filed for reorganization under the bankruptcy laws. In April, 1984, Wilson Foods sold Williams Meat to SLC, a corporation whose only stockholder is Ronald Sexton. On the same day, SLC sold its stock in Williams Meat to the Franklin Investment Group, a subsidiary corporation wholly owned by SLC. The sale of Williams Meat took the company out of the pending bankruptcy proceeding.

At the time of the sale, the United Food and Commercial Workers Union represented the meatcutters at Williams Meat. Under the collective bargaining contract then in force with the union representing the meatcutters, the company was obligated to make contributions to a multi-employer pension plan sponsored and administered by a group of trustees. The contract expired in August, 1984, and was not renewed.[1]

When the contract expired, Williams Meat was considered, under the Employee Retirement Income Security Act (ERISA), see 29 U.S.C. §§ 1001–1461, to have withdrawn completely from the multi-employer pension plan. See 29 U.S.C. § 1383(a)(1). That withdrawal triggered liability on the part of Williams Meat for a final payment to the pension plan to cover certain unfunded vested benefits. See 29 U.S.C. § 1381(a), § 1383(e). The amount of the assessment is determined by statute. See 29 U.S.C. § 1381(b)(1), § 1391.

In early 1987, Williams Meat filed for reorganization under the bankruptcy laws; in late summer, 1987, the reorganization petition was converted into one for liquidation. In January, 1988, the pension plan trustees made a claim in the bankruptcy proceeding for the withdrawal liability assessment due under ERISA.

In June, 1988, the pension plan trustees demanded payment of the withdrawal liability assessment from SLC and the Franklin Investment Group. Those demands were sent to Ronald Sexton in his capacity as representative of those corporations. In March, 1989, the pension plan trustees sued in federal district court for payment of the withdrawal liability assessment; the defendants named were SLC, the Franklin Investment Group, Ronald Sexton individually, and the Sexton Family Trust, a revocable trust established in 1980 by Mr. Sexton and as to which he is the grantor, a trustee, and a beneficiary. By May, 1990, several other corporate entities associated with Mr. Sexton had been added as defendants. In July, 1991, the trial court[2] granted summary judgment to the pension plan trustees against all defendants. In August, 1991, the clerk entered judgment for the plaintiffs in accordance with the trial court's ruling. The defendants appeal from that judgment.

There are four issues on appeal—whether the defendants have waived a defense of laches against the pension plan trustees by failing to request arbitration of that issue; whether the Sexton Family Trust may be held liable as a trade or business, as defined by ERISA, under the control of Ronald Sexton; whether Ronald Sexton individually may be held liable; and whether the pension plan trustees are barred from pursuing the suit because of a settlement agreement allegedly reached between them and the defendants. We affirm the trial court as to all issues.

I.

■ "As soon as practicable after an employer's complete ... withdrawal" from

---

* The HONORABLE MORRIS S. ARNOLD, United States District Judge for the Western District of Arkansas, sitting by designation. Since this case was submitted, Judge ARNOLD was appointed to the Eighth Circuit Court of Appeals.

1. The Teamsters had struck Williams Meat, and most of the meatcutters apparently refused to cross the Teamsters picket line. In that environment, negotiations for a new contract with the union representing the meatcutters broke down and were never resumed.

2. The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

a multi-employer pension plan, the plan sponsor "shall" notify the employer of the amount of the withdrawal liability assessment sought, submit to the employer a schedule for payment, and demand from the employer "payment in accordance with the schedule." *See* 29 U.S.C. § 1399(b)(1). To challenge a determination of amount due, the employer must request a review from the plan sponsor; that review must be requested within 90 days of the employer's receipt of the notice of the determination. *See* 29 U.S.C. § 1399(b)(2)(A). After "a reasonable review," the plan sponsor "shall" notify the employer of the decision reached. *See* 29 U.S.C. § 1399(b)(2)(B).

"Any dispute between an employer and the plan sponsor ... concerning a determination" made under 29 U.S.C. §§ 1381–1399 "shall be resolved through arbitration." *See* 29 U.S.C. § 1401(a)(1). Either party may initiate arbitration proceedings within 180 days of an employer's timely request to the plan sponsor for a review of the determination of amount due or within 60 days of the plan sponsor's notification to the employer of its decision after such review, whichever is earlier. *See* 29 U.S.C. § 1401(a)(1). Judicial review of a determination reached through arbitration may be sought within 30 days of the arbitration award. *See* 29 U.S.C. § 1401(b)(2). If neither party seeks arbitration, the withdrawal liability assessment becomes due according to the schedule devised by the plan sponsor, who may sue for collection under that schedule. *See* 29 U.S.C. § 1401(b)(1).

In this case, notice and the demand for payment of the withdrawal liability assessment were not proffered to the defendants until June, 1988, almost four years after liability for the assessment was triggered. Even the claim in the Williams Meat bankruptcy proceeding was not made until January, 1988, over three years after liability was triggered. The defendants contended in the trial court that this delay prejudiced them; they pleaded laches as a defense to the suit. The trial court held, however, that because the defendants had never requested arbitration, they had waived their right to assert laches as a defense to payment. The first issue on appeal, then, is

whether the trial court was correct in that holding.

The defendants argue that the question of unreasonable delay is one requiring statutory interpretation and is therefore not suitable for resolution by an arbitrator rather than a court. They also argue that the purpose of the arbitration requirement is to resolve disputes as to the amount claimed or the method used in calculating the amount and that the dispute in this case involves neither of those issues. The pension plan trustees argue that the essence of the laches claim—that the trustees did not notify the defendants "[a]s soon as practicable," *see* 29 U.S.C. § 1399(b)(1), after the withdrawal of Williams Meat from the multi-employer pension plan—is a factual dispute and therefore within the purview of matters amenable to resolution by an arbitrator. They also argue that this defense was available to the defendants by the time arbitration had to be requested and that the defendants therefore have no good excuse for not seeking arbitration on that point. We agree with the pension plan trustees and affirm the trial court on this issue.

The courts holding that all defenses are barred if not initially arbitrated cite several reasons for so ruling—the congressional preference for a nonjudicial, possibly speedier resolution for disputes, as reflected by the establishment of an arbitration scheme; the fact that 29 U.S.C. § 1401 declares that "[a]ny dispute" concerning a determination related to a withdrawal liability assessment is to be arbitrated; the arbitrator's likely expertise in pension matters; the consideration that factual questions are especially amenable to resolution by an arbitrator; and the promotion of judicial economy and efficient use of judicial resources by the potential for resolution of most issues outside the court system. *See, e.g., Robbins v. Admiral Merchants Motor Freight, Inc.,* 846 F.2d 1054, 1056–57 (7th Cir.1988), and *Teamsters Pension Trust Fund v. Allyn Transportation Co.,* 832 F.2d 502, 504–06, 505 n. 4 (9th Cir.1987).

Even the cases allowing certain defenses to bypass arbitration state that the existence of a question of statutory interpretation is not, by itself, sufficient to eliminate the arbitration requirement and that factual issues must always be arbitrated. *See, e.g., Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund,* 852 F.2d 156, 164 (6th Cir.1988); *New York State Teamsters Conference Pension and Retirement Fund v. McNicholas Transportation Co.,* 848 F.2d 20, 22–23 (2d Cir.1988); *Flying Tiger Line v. Teamsters Pension Trust Fund,* 830 F.2d 1241, 1254–55 (3d Cir.1987); *I.A.M. National Pension Fund v. Clinton Engines Corp.,* 825 F.2d 415, 416–18, 422, 428 n. 23, 429 (D.C.Cir.1987); and *Republic Industries, Inc. v. Teamsters Joint Council No. 83,* 718 F.2d 628, 634–35 (4th Cir. 1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984).

One appellate court has held that defenses not going to the merits of the actual assessment need not be arbitrated. *See In re Centric Corp.,* 901 F.2d 1514, 1518 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 145, 112 L.Ed.2d 112 (1990). That court described a claim that a pension plan's trustees brought a suit so late as to prejudice the employer as such a defense and characterized it as based on laches. *Id.; see also Trustees of Colorado Pipe Industry Pension Trust v. Howard Electrical and Mechanical, Inc.,* 909 F.2d 1379, 1386 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 958, 112 L.Ed.2d 1046 (1991). In the case at bar, however, the alleged delay at issue was the pension plan trustees' submission of notice and demand for payment to the defendants, not any delay in bringing suit.

As far as we can tell, only one court has specifically considered whether arbitration is required when an employer claims that notice from pension plan trustees was not made "[a]s soon as practicable," *see* 29 U.S.C. § 1399(b)(1). In that case, the court held that a defense of laches based on that provision was waived if not arbitrated. *See ILGWU National Retirement Fund v. Smart Modes of California, Inc.,* 735 F.Supp. 103, 106–07 (S.D.N.Y.1990); *see also Joyce v. Clyde Sandoz Masonry,* 871 F.2d 1119, 1127 (D.C.Cir.1989), *cert. denied,* 493 U.S. 918, 110 S.Ct. 280, 107 L.Ed.2d 260 (1989).

We believe that the question of whether the pension plan trustees' delay was unreasonable is a factual one that could have been raised by the defendants at the time they could have requested arbitration. We hold, accordingly, that by their failure to request arbitration they have waived it as a defense to payment. We therefore affirm the trial court as to this issue.

## II.

■ "[A]ll employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." *See* 29 U.S.C. § 1301(b)(1). Liability for withdrawal assessments is joint and several as to all such trades and businesses. *See, e.g., Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 120–21 (4th Cir.1991), and *Pension Benefit Guaranty Corp. v. Ouimet Corp.,* 630 F.2d 4, 11 (1st Cir.1980), *cert. denied,* 450 U.S. 914, 101 S.Ct. 1356, 67 L.Ed.2d 339 (1981); *see also Board of Trustees of Western Conference of Teamsters Pension Trust Fund v. Lafrenz,* 837 F.2d 892, 893–95 (9th Cir.1988).

The statutes do not define "trade or business." The courts considering that phrase "have engaged in an essentially factual inquiry" to determine whether a particular entity should be considered a trade or business for purposes of ERISA. *Lafrenz,* 837 F.2d at 894 n. 6.

■ The trial court in this case, on motion for summary judgment, held that no genuine issue of material fact existed on the question of whether the Sexton Family Trust was a trade or business under the control of Ronald Sexton. The defendants apparently do not contest the finding of

Mr. Sexton's control over the trust.[3] They do, however, dispute that the trust is a trade or business, arguing that its primary purpose was not to generate income or profit but instead to assist in Mr. Sexton's estate planning arrangements. The defendants also argue that its income-generating activities were not continuous or regular enough to amount to the acts of a trade or business and that, in any event, those activities had not taken place at the time the liability for the withdrawal assessment arose. They argue, thus, that the trial court's grant of summary judgment as to that issue was incorrect. At the very least, they contend, a genuine issue of material fact still exists on the question.

The pension plan trustees argue that summary judgment was appropriate on the question of whether the trust's activities make it a trade or business. They further argue that the defendants failed to raise in the trial court the issue of when the trust may have become a trade or business and are thus barred from raising it now. We agree with the pension plan trustees and affirm the trial court on this issue.

The cases interpreting the meaning of "trade or business" under ERISA have held the following fact patterns to have established the existence of a trade or business liable under the law: vehicle leasing operations conducted for profit; vehicle and real property leases between two entities under common control; and the subsistence of one commonly controlled entity, directly or indirectly, partly or entirely, upon the revenues generated by a second commonly controlled entity. *See, e.g., La-frenz*, 837 F.2d at 894–95; *Trustees of the Amalgamated Insurance Fund v. Saltz*, 760 F.Supp. 55, 57–58 (S.D.N.Y.1991); *Central States, Southeast and Southwest Areas Pension Fund v. Sztanyo Trust*, 693 F.Supp. 531, 537–38 (E.D.Mich.1988); *Central States, Southeast and Southwest Areas Pension Fund v. Bay*, 684 F.Supp. 483, 485 (E.D.Mich.1988); *Central States, Southeast and Southwest Areas Pension Fund v. Skyland Leasing Co.*, 691 F.Supp.

6, 12 (W.D.Mich.1987), *aff'd without opinion*, 892 F.2d 1043 (6th Cir.1990); *Central States, Southeast and Southwest Areas Pension Fund v. Long*, 687 F.Supp. 298, 301 (E.D.Mich.1987); *United Food and Commercial Workers Union v. Progressive Supermarkets*, 644 F.Supp. 633, 639 (D.N.J.1986); and *Pension Benefit Guaranty Corp. v. Center City Motors, Inc.*, 609 F.Supp. 409, 412 (S.D.Cal.1984). In this case, it is undisputed that the trust, established in 1980, had leased real property in 1986 and 1987 to Williams Meat and SLC. Without addressing the question of when those activities occurred, the trial court held that such undisputed facts established the existence of a trade or business for ERISA purposes. If the question of the timing of the trust's activities is not a consideration, we agree with that legal conclusion.

We must determine, then, whether the issue of when the trust became a trade or business was raised in the trial court. If it was not, the defendants are barred from raising it on appeal. *See, e.g.*, 10 C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure: Civil* 2d § 2716 at 651–54 (1983).

We have examined the defendants' response to the plaintiffs' motion for summary judgment on count one, the defendants' motion for and reply brief in support of reconsideration of the trial court's order granting summary judgment to the plaintiffs on count one, the defendants' own motion for summary judgment, and the defendants' response to the plaintiffs' motion for summary judgment on count two. To the extent that those documents address the problem of whether the trust was a trade or business, they do so only in the context of the purpose and nature of the trust's activities; nowhere is there any argument relating to the timing of the trust's activities. We hold, therefore, that the defendants may not raise this issue now. Ac-

---

**3.** Of course, for the trust to be jointly liable with SLC and the Franklin Investment Group, all three entities have to be under the common control of Ronald Sexton. The defendants, however, apparently do not contest that issue either.

cordingly, we affirm the trial court's entry of summary judgment against the trust.

## III.

■ In the original and successive complaints, the pension plan trustees pleaded that Ronald Sexton was personally liable for the withdrawal assessment because he controlled Williams Meat, SLC, the Franklin Investment Group, and the Sexton Family Trust in such a way as to make them alter egos of himself. The trial court, on motion for summary judgment, declined to address the alter ego question as to any of the corporate defendants and held, as to the trust, that because it was an unincorporated trade or business that Mr. Sexton controlled, he was personally liable under the statute for any withdrawal assessment for which the trust was liable. The defendants contend on appeal that Mr. Sexton cannot be held personally liable for the withdrawal assessment against either the trust or the corporate defendants.

As noted earlier, liability for withdrawal assessments is joint and several among all trades and businesses under common control. *See, e.g., Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 120–21 (4th Cir.1991), and *Pension Benefit Guaranty Corp. v. Ouimet Corp.,* 630 F.2d 4, 11 (1st Cir.1980), *cert. denied,* 450 U.S. 914, 101 S.Ct. 1356, 67 L.Ed.2d 339 (1981); *see also Board of Trustees of Western Conference of Teamsters Pension Trust Fund v. Lafrenz,* 837 F.2d 892, 893–95 (9th Cir.1988). We have already found that the trust is liable for the withdrawal assessment obligations of the corporate defendants by virtue of the fact that both it and the corporate defendants are trades and businesses under the common control of Mr. Sexton. The question, then, is whether Mr. Sexton himself may be held personally liable for those obligations, and, if so, under what circumstances. We find for the pension plan trustees on this issue, although for slightly different reasons from those argued.

In both their motion for and their reply brief in support of reconsideration of the trial court's order granting summary judgment to the plaintiffs on count one, the defendants described the trust as an alter ego of Mr. Sexton. The effect of this concession, in our view, is that Mr. Sexton may be held personally liable for the obligations of the trust.

The concept of personal liability for the obligations of an entity considered to be an alter ego of an individual is frequently employed in relation to corporations. *See, e.g.,* H. Henn and J. Alexander, *Laws of Corporations and Other Business Enterprises* § 146 at 351 (3d ed. 1983), and 18 Am.Jur.2d *Corporations* § 45 at 844–46 (1985); *see also Rockney v. Blohorn,* 877 F.2d 637, 643 (8th Cir.1989); *Connors v. P & M Coal Co.,* 801 F.2d 1373, 1378 (D.C.Cir.1986); and Annotation, *What Constitutes "Employer" for Purposes of Employer's Withdrawal Liability under Multiemployer Pension Plan Amendments Act of 1980,* 95 A.L.R.Fed. 703, especially § 4 at 714–20 (1989). We see no reason why the alter ego concept should not have the same effect in the case of a trust. We therefore affirm the trial court on its holding that Mr. Sexton is personally liable for the withdrawal liability assessment in this case.[4]

---

**4.** We believe that it is clear, under ordinary circumstances, that Mr. Sexton could not be held personally liable for the obligations of the corporate defendants without a finding that those corporations are his alter egos. The appellate courts considering this question have held that a controlling stockholder or officer of a corporation that is liable for a withdrawal assessment is not individually liable for the assessment unless the corporation is found to be an alter ego of that controlling officer or stockholder. *See, e.g., Scarbrough v. Perez,* 870 F.2d 1079, 1084 (6th Cir.1989); *De Breceni v. Graf Brothers Leasing, Inc.,* 828 F.2d 877, 879–81 (1st Cir.1987), *cert. denied,* 484 U.S. 1064, 108 S.Ct. 1024, 98 L.Ed.2d 988 (1988); and *Connors v. P & M Coal Co.,* 801 F.2d 1373, 1377–78 (D.C.Cir. 1986); *see generally* Annotation, *What Constitutes "Employer" for Purposes of Employer's Withdrawal Liability under Multiemployer Pension Plan Amendments Act of 1980,* 95 A.L.R.Fed. 703, especially § 4 at 714–20 (1989). *See also Rockney v. Blohorn,* 877 F.2d 637, 641–43 (8th Cir.1989), and *Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan v. Hroch,* 757 F.2d 184, 190–91 (8th Cir. 1985).

## IV.

■ Numerous settlement discussions took place between the parties in the summer of 1989. In September, 1989, the defendants proffered a check for $60,000 to the pension plan trustees. That check was refused. The defendants then moved for enforcement of a settlement agreement that they contended had been accepted by all parties. The trial court denied the motion even before the pension plan trustees responded.

In the order relating to its conclusion about the settlement agreement, the trial court stated that it had reviewed the various documents submitted by the defendants and had concluded that "no settlement offer made by plaintiffs was timely accepted by defendants." In a later order, the trial court declined to vacate that initial order; in a third order, the trial court denied discovery requests of the defendants relating to the settlement negotiations on the grounds that settlement was no longer an issue.

On appeal, the defendants submit the documents originally offered to the trial court and argue that those documents are uncontroverted and demonstrate as a matter of law that one of the settlement offers made by the pension plan trustees was indeed accepted by the defendants. They argue that the trial court's conclusion that no settlement agreement had been reached was wrong. At the very least, they argue, they are entitled to a hearing to present additional evidence on the issue. We disagree as to both arguments and affirm the trial court's finding that no settlement was reached.

We have examined the defendants' motion to enforce the alleged settlement agreement, the two briefs submitted in support of it, and the defendants' letter to the trial court citing additional authority for the motion. None of those documents contains any request for an evidentiary

hearing or even the suggestion that the submission of additional evidence, beyond that accompanying the motion, would be necessary or helpful. The trial court entered its order denying the motion on September 19, 1989. It was not until a month later, on October 20, 1989, that the defendants moved to vacate that order and requested an evidentiary hearing. It was not until November 16, 1989, in their reply to the pension plan trustees' response to the defendants' motion to vacate, that the defendants even described the testimonial evidence that they might present at a hearing. Under these circumstances, we hold that the trial court was well within its discretion to act on the original motion without giving the defendants an evidentiary hearing. *See* Fed.R.Civ.P. 43(e). We turn, then, to the merits of the trial court's ruling.

■ On September 6, 1989, the pension plan trustees offered three settlement proposals to the defendants; the deadline for responding to or accepting one of the alternatives was 5:00 p.m. on September 7, 1989. The defendants contend that during a telephone conversation between Mr. Sexton and counsel for the pension plan trustees before the deadline, the attorney agreed to explore the possibility of a fourth alternative suggested by Mr. Sexton. The defendants further contend that the attorney also agreed to leave the offer open as to the three previous alternatives, at least until a decision had been reached on the fourth proposal. In reliance upon that agreement, the defendants contend, they did not take further action on the three initial proposals until after the pension plan trustees had rejected the fourth, which was on September 8, 1989, one day after the deadline originally given by the pension plan trustees. When the defendants then attempted to proffer a check reflecting their acceptance of one of the three initial proposals, counsel for the pension plan trustees refused to accept it. The defendants' motion is accompanied by various

In this case, however, Mr. Sexton's personal liability is predicated not on his status as controlling stockholder or officer of the corporate defendants but because of his role in relation to the trust, which itself is jointly and severally liable for the withdrawal assessment obligations of the corporate defendants. *See generally* Annotation, *What Constitutes "Employer",* 95 A.L.R.Fed. 703, especially § 9(a) at 727–31.

correspondence between the parties and an affidavit from Mr. Sexton in transcript-like form containing "his [best] recollection" of the conversation between him and the attorney.

The essence of the defendants' argument is that because they delayed a decision on the first three alternatives in reliance upon the statement of counsel for the pension plan trustees that the deadline for all offers was extended through September 8, 1989, the pension plan trustees are now estopped to reject the defendants' proffer based on one of the initial proposals. The pension plan trustees argue, in response, that Mr. Sexton's suggestion of a fourth alternative acted as a counteroffer that extinguished the offer of the first three alternatives; implicit in this argument is the contention that no extension of the original deadline was given by counsel for the pension plan trustees.

Correspondence from counsel for the pension plan trustees, submitted in support of the defendants' motion, reflects that as of September 6, 1989, the pension plan trustees offered three alternatives to the defendants—payment of $62,500 in a lump sum by cashier's check,[5] over time with security in the form of a surety bond, and over time with security in the form of a letter of credit. A letter from counsel for the pension plan trustees dated September 8, 1989, also submitted with the defendants' motion, asserts that Mr. Sexton had rejected the pension plan trustees' original offers and had counteroffered "a lower amount." That letter also states that the pension plan trustees had rejected the counteroffer and declined to renew their previous offer of $62,500.

The trial court found that "no settlement offer made by plaintiffs was timely accepted by defendants." This finding by the trial court is a factual one. *See, e.g., Glass v. Rock Island Refining Corp.,* 788 F.2d 450, 455 (7th Cir.1986). As such, it is not to be set aside "unless clearly erroneous." *See* Fed.R.Civ.P. 52(a). In making that determination, we must construe the evidence "in a light most favorable to the appellee." *United Barge Co. v. Notre Dame Fleeting and Towing Service, Inc.,* 568 F.2d 599, 602 (8th Cir.1978). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety," the trial court's finding of fact is to be upheld. *Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). "This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence." *Id.* at 574, 105 S.Ct. at 1511–12. After reviewing the evidence submitted with the defendants' motion to enforce the alleged settlement agreement, we hold that the trial court's finding that no settlement was reached is not clearly erroneous. We therefore affirm the trial court as to this issue.

## V.

For the reasons stated, we affirm the judgment of the trial court.

---

**5.** The documents accompanying the defendants' motion specify a lump-sum payment of $60,000. These documents apparently were also enclosed with the attorney's letter, although that is not absolutely clear from the record.