OPINION
{¶ 1} Plaintiffs-appellants, Ronald Webster, et al., appeal a decision of the Preble County Court of Common Pleas granting summary judgment in favor of defendants-appellees, G J Kartway, Inc., et al.
 {¶ 2} G J Kartway is a go-cart racing track located in the city of Camden, in Preble County, Ohio. The racing track is situated on property owned by Barnetts Mill Elevator, Inc., an area grain elevator. Gary Gregg is the president of Barnetts Mill Elevator. Because of his "lifelong interest in go-carting and motorsports," Mr. Gregg permits the Ohio Valley Karting Association, an affiliate of the World Karting Association ("WKA"), to put on races at G J Kartway.
 {¶ 3} On April 28, 2002, Ronald Webster (hereinafter "appellant") traveled to G J Kartway to watch his son compete in a go-cart race. Once there, appellant went to the registration window, and registered his son for competition. As appellant started to descend a small set of stairs leading off the wooden deck from which the registration window is accessed, appellant slipped and fell down the stairs, thereby sustaining injury.[1] The deck and stairs were wet because it had rained earlier that morning.
 {¶ 4} Two weeks prior to his accident, appellant had visited G J Kartway for a previous competition, at which time he signed a "Release and Waiver of Liability, Assumption of Risk, and Indemnity Agreement." The release stated, in pertinent part:
 {¶ 5} "IN CONSIDERATION of being permitted in RACING PROGRAMS, to enter for any purposes the RESTRICTED AREA (herein defined as including, but not limited to the racing surface, pit areas, infield, burn out area, approach area, shut down area, and all walkways, concessions, and other appurtenant areas where any activity related to the Event shall take place or where special authorization, permission, or credentials are required or where admittance to the general public is restricted or prohibited), or to compete, officiate, observe, work for, or for any purpose participate in any way in the Event, each of the Undersigned, for himself and personal representatives, assigns, heirs and next of kin:
 {¶ 6} "* * *
 {¶ 7} "2. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT SUE the * * * track operators, track owners * * * owners, and lessees of PREMISES owners, used to conduct the Event, * * * and each of them, their officers, directors, agents and employees, all for purposes herein referred to as RELEASEES, FROM ALL LIABILITY TO THE UNDERSIGNED, the Undersigned's personal representatives, assigns, heirs, and next of kin FOR ALL LOSS OR DAMAGE, AND ANY CLAIM OR DEMANDS THEREFOR, ON ACCOUNT OF INJURY TO THE PERSON OR PROPERTY OR RESULTING IN DEATH OF THE UNDERSIGNED, WHETHER CAUSED BY THE NEGLIGENCE OF RELEASEES OR OTHERWISE, while the Undersigned is in or upon the RESTRICTED AREA, and/or competing, officiating, observing, working for, or for any purpose participating in such event."
 {¶ 8} Appellant signed the aforementioned release on April 14, 2002. However, he did not sign another release on April 28, 2002, the day of the accident.
 {¶ 9} On March 29, 2004, appellant filed a complaint against G J Kartway, Barnetts Mill Elevator, and Mr. Gregg (hereinafter, collectively referred to as "appellees"), alleging that appellees had breached their duty to keep the stairways at the racing track in a reasonably safe condition.[2]
Specifically, appellant alleged that the stair's handrail was too wide to grasp and, therefore, posed an unreasonable risk of harm to him and to the public.
 {¶ 10} Appellees moved for summary judgment on appellant's claims on two grounds. First, appellees argued that appellant could not prove his negligence claim because he had no evidence to establish that any act or failure to act on appellees' part, including their failure to do something about the size of the stair's handrails, was a proximate cause of appellant's injuries. Second, appellees argued that they were immune from liability as a result of the "Release and Waiver of Liability, Assumption of Risk, and Indemnity Agreement" that appellant had signed on April 14, 2002. Appellees asserted that the April 14, 2002 release "carried over and applied" to the events held on April 28, 2002. In support of this assertion, appellees cited Mr. Gregg's affidavit, which they attached to their motion for summary judgment.
 {¶ 11} Appellant filed a memorandum in opposition to appellees' motion for summary judgment, arguing that genuine issues of material fact did exist as to the issue of proximate cause regarding his negligence claim against appellees. Appellant also raised several arguments regarding the validity and applicability of the release, including that he "was mistaken as to the meaning, effect and range" of the release; that he was not in a restricted area when he was injured; and that there was inadequate consideration given for the release. However, appellant did not challenge appellees' assertion that the April 14, 2002 release carried over and applied to the events on April 28, 2002, nor did he challenge the release's applicability on the basis that he signed a release on April 14, 2002, but did not sign another release on April 28, 2002.
 {¶ 12} On June 1, 2005, the trial court granted summary judgment to appellees on appellant's complaint on the basis of the release that appellant had signed. The trial court noted that summary judgment would not have been appropriate on the negligence issue because there were genuine issues of material fact remaining as to that issue. However, the trial court found that the negligence issue had been rendered moot by the court's resolution of the release issue.
 {¶ 13} Appellant now appeals, assigning the following as error:
 {¶ 14} Assignment of Error No. 1:
 {¶ 15} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN GRANTING APPELLEE-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 16} Appellant argues that the trial court erred in granting summary judgment to appellees on the basis of the release. We disagree with this argument.
 {¶ 17} An appellate court's standard of review for summary judgments is de novo; the appellate court reviews the trial court's judgment independently and without deference to the trial court's determination. Burgess v. Tackas (1998),125 Ohio App.3d 294, 296. A motion for summary judgment should be granted only where it is shown that (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, with the nonmoving party being entitled to have the evidence construed most strongly in his or her favor. Harless v. Willis DayWarehousing, Co. (1978), 54 Ohio St.2d 64, 66. The moving party has the burden of showing that no genuine issue exists as to any material fact. Id.
 {¶ 18} Appellant presents three arguments in support of his assignment of error. First, he argues that because he signed the release on April 14, 2002, two weeks before the day of the accident, but did not sign another release on April 28, 2002, the day of the accident, the release does not preclude him from bringing a negligence action against appellees. Specifically, he asserts that April 14, 2002 release does not, as appellees claim, apply or carryover to the events held on April 28, 2002.
 {¶ 19} Appellees respond to this argument asserting that appellant failed to raise this argument in the trial court, and, therefore, has waived this argument for purposes of appeal. Appellant counters by insisting that "[t]his is simply not true." However, a review of the record demonstrates that appellant didnot raise in the trial court the argument that he is now raising on appeal.
 {¶ 20} As we have indicated, appellees moved for summary judgment on two grounds, the second of which was that the "Release and Waiver of Liability, Assumption of Risk, and Indemnity Agreement" that appellant signed on April 14, 2002, "carried over and applied" to the events held on April 28, 2002. In support of this assertion, appellees presented the affidavit of Mr. Gregg, which stated, in pertinent part:
 {¶ 21} "The go-cart events at G J [Kartway] on April 14, 2002 were rained out and there was no on-track activity. The Releases are signed when pit passes permitting entry into the track's restricted areas are obtained. Since the April 14, 2002 events were rained out, the track chose to honor at the next event held on April 28, 2002 any pit passes issued on April 14, 2002. A pit pass holder from April 14, 2002 was not required to sign the Release again upon return on April 28, 2002. The April 14, 2002 Releases applied with respect to the events of April 28, 2002."
 {¶ 22} Citing Mr. Gregg's affidavit, appellees asserted that the April 14, 2002 release "carried over and applied to" the events held on April 28, 2002, the day of appellant's accident.
 {¶ 23} Appellant responded to this argument by asserting that the release was either invalid or inapplicable on several grounds, including that he "was mistaken as to the meaning, effect and range" of the release; that he was not in a restricted area when he was injured; and that there was inadequate consideration given for the release. However, appellant did not challenge any of the assertions that Mr. Gregg made in his affidavit. In particular, appellant did not challenge appellees' pivotal assertion that the April 14, 2002 release "carried over and applied to" the events on April 28, 2002. Instead, he is now challenging those assertions for the first time on appeal.
 {¶ 24} It is well-settled that a party may not raise for the first time on appeal any issue or error that the party could have called to the trial court's attention at a time when the trial court could have ruled on the issue, or corrected the error, or avoided the error altogether. See, e.g., Schade v. Carnegie BodyCo. (1982), 70 Ohio St.2d 207, 210. This principle applies to summary judgment proceedings. See State ex rel. Van Meter v.Lawrence Cty. Bd. of Commrs. (June 29, 1994), Lawrence App. No. 93CA27. See, also, Shalkhauser v. Medina (2002),148 Ohio App.3d 41, 45. As stated in State ex rel. Van Meter:
 {¶ 25} "It is well settled that issues cannot be raised for the first time on appeal. * * * Although application of this principle does not alleviate the moving party from carrying its burden on summary judgment, it does prohibit the party in appealing the judgment from advancing new theories or raising new issues in order to secure reversal. See 10 West, Federal Practice Procedure (1983), 651-654, Section 2716. A review of federal case law reveals numerous instances where the party opposing summary judgment has been prohibited from raising new arguments on appeal. See, e.g., Vaughn v. Sexton (C.A.8, 1982),975 F.2d 498, 503; O.R.S. Distilling Co. v. Brown-Forman Corp. (C.A.8, 1982), 972 F.2d 924, 926; Topalian v. Ehrman (C.A.5, 1992),954 F.2d 1125, 1131-1132. These examples provide an appropriate guide given that Ohio Civ.R. 56 is based on its federal counterpart. See Rules Advisory Comm. Staff Note in 10 West's, Ohio Practice (1970) 268."
 {¶ 26} Because appellant did not raise in the trial court the argument that he is now raising on appeal, he has waived this argument for purposes of appeal. See Schade,70 Ohio St.2d at 210; State ex rel. Van Meter v. Lawrence Cty. Bd. of Commrs.; and Shalkhauser v. Medina.
 {¶ 27} Appellant's second argument is that he "could not have discovered the defects of the steps and handrails and therefore cannot be held to have assumed the risk or released [a]ppellees from such dangerous conditions of which he was not and could not be aware." We disagree with this argument.
 {¶ 28} In addition to the provisions we have already quoted, the release in question contained the following terms:
 {¶ 29} "[The undersigned] 1. ACKNOWLEDGES, agrees, and represents that the Undersigned has, or will immediately upon entering and continuously thereafter, inspect such RESTRICTED AREA and does further warrant that the Undersigned's participation in the scheduled Event and entrance upon the RESTRICTED AREA, constitute an acknowledgement that the Undersigned has inspected the RESTRICTED AREA and that it is safe and reasonably suited for the purposes of the RACING PROGRAM, and further agrees and warrants that if, at any time the Undersigned is in or about RESTRICTED AREAS and feels anything to be unsafe, the Undersigned will immediately advise the OFFICIALS of such and will leave the RESTRICTED AREAS.
 {¶ 30} "* * *
 {¶ 31} "3. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the Releasees from any loss, liability, damage, or cost they may incur due to the presence of the Undersigned in or upon the RESTRICTED AREA, or in any way competing, officiating, observing, or working for, or for any purpose participating in the Event, and whether caused by the negligence of the Releasees or otherwise; and
 {¶ 32} "4. HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY, DEATH, OR PROPERTY DAMAGE due to negligence of Releasees or otherwise while in or upon the RESTRICTED AREA, and/or while competing, officiating, observing, or working for, or for any purpose participating in such Event;
 {¶ 33} "* * *
 {¶ 34} "6. EACH OF THE UNDERSIGNED further expressly agrees that the foregoing Release and Waiver of Liability, Assumption of Risk, and Indemnity Agreement extends to all acts of negligence by the Releasees, INCLUDING NEGLIGENT RESCUE OPERATIONS and is intended to be as broad and inclusive as is permitted by the law of the province or state in which the Event is conducted, and that if any portion thereof is held invalid, it is agreed that the balance, notwithstanding, shall continue in full legal force and effect.
 {¶ 35} "I HAVE READ THIS RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT, FULLY UNDERSTAND ITS TERMS, UNDERSTAND THAT I HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT, AND HAVE SIGNED IT FREELY AND VOLUNTARILY WITHOUT ANY INDUCEMENT, ASSURANCE, OR GUARANTEE, ORAL OR WRITTEN, BEING MADE TO ME AND INTEND MY SIGNATURE TO BE A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW."
 {¶ 36} By signing the release, appellant expressly agreed to assume "FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY, DEATH, OR PROPERTY DAMAGE due to [appellees'] negligence * * * or otherwise while in or upon the RESTRICTED AREA, or in any way competing, officiating, observing, or working for, or for anypurpose participating in such Event[.]" (Emphasis added.) The Restatement provides that "[a] plaintiff who by contract or otherwise expressly agrees to accept a risk of harm arising from the defendant's negligent or reckless conduct cannot recover for such harm, unless the agreement is invalid as contrary to public policy." 2 Restatement of the Law 2d, Torts (1965) 565, Section 496B ("Express Assumption of Risk").
 {¶ 37} Appellant has not identified any public policy that renders the release invalid. Instead, he asserts that the danger posed by the handrails was not "reasonably discoverable to a layman," and that it was not within his contemplation that the release would bar recovery for the injuries caused by this type of defect. We find these contentions unpersuasive.
 {¶ 38} By signing the release, appellant acknowledged that he had a continuing duty to inspect the premises, and further agreed that he had, in fact, "inspected the RESTRICTED AREA and that it is safe and reasonably suited for the purposes of the RACING PROGRAM[.]" The record demonstrates that appellant had been to G J Kartway on at least 20 occasions prior to his accident. The "dangerous condition" for which he now seeks recovery, i.e., the handrails being too wide, was open and obvious, and despite appellant's contention to the contrary, was "reasonably discoverable" by a layperson.
 {¶ 39} Furthermore, the express language of the release makes it clear that by signing the release, appellant "HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE" appellees "FOR ALL LOSS OR DAMAGE * * * WHETHER CAUSED BY THE NEGLIGENCE" of appellees, or otherwise. Appellant cannot reasonably claim that it was not within his contemplation that he would be barred from suing appellees for the injuries he allegedly sustained.
 {¶ 40} Appellant cites Tanker v. N. Crest Equestrian Ctr.
(1993), 86 Ohio App.3d 522, in support of his second argument. InTanker, the plaintiff, Kathleen Tanker, contracted with the defendant, North Crest Equestrian Center, to take horseback riding lessons. Before beginning lessons, Tanker signed a document entitled "Release," in which she agreed:
 {¶ 41} "`1. To assume full responsibility and liability for any and all * * * personal injury * * * associated with the riding * * * of any horse or horses at North Crest Equestrian Center * * *.
 {¶ 42} "`2. To forever indemnify and save harmless North Coast [sic] Equestrian Center * * *, its owners, agents, officers and employees from any and all legal liability for damages, expenses, legal fees, judgments or costs arising out of any loss or injury sustained as a result of riding, training, or boarding any horse or horses at North Crest Equestrian Center * * *.
 {¶ 43} "`3. To indemnify and save North Crest Equestrian Center * * * harmless from any and all claims and liability for * * * personal injury caused by the * * * negligence of other students, riders, trainers or boarders at North Crest Equestrian Center * * *.'" Tanker, 86 Ohio App.3d at 524.
 {¶ 44} While receiving a lesson from one of North Crest's trainers/instructors, Tanker fell from the horse she was riding, causing Tanker to sustain serious injuries. Tanker sued North Crest, as well as its owner and the trainer/instructor. The defendants moved for summary judgment on the basis of the release Tanker had signed. The trial court granted defendant's motion on the basis of the release Tanker had signed.
 {¶ 45} On appeal, the court of appeals reversed the trial court's grant of summary judgment to the defendants. The trial court found that a material question of fact remained for the jury regarding whether the document Tanker had signed "released" North Crest, its owner, and its trainer/instructor, from liability for their negligence. In support of its decision, the majority in Tanker stated that the second and third paragraphs of the release constituted written in indemnity language, but were insufficient to release the defendants from liability.Tanker, 86 Ohio App.3d at 525. As to the first paragraph of the release, in which appellant agreed "[t]o assume full responsibility and liability for any and all * * * personal injury * * * associated with the riding * * * of any horse or horses at North Crest Equestrian Center[,]" the court found that this provision also provided an inadequate basis to grant the defendants summary judgment on the question of whether the release was sufficient to bar Tanker's suit. Specifically, theTanker court stated:
 {¶ 46} "Without even using the term `release,' paragraph 1 purports to cause [Tanker] to assume full responsibility for anything that may happen to appellant or anyone else while riding. It purports to provide such comfort for everyone in the world. Such a clause is so general as to be meaningless. The intentions of the parties should be ascertained by the jury."Tanker, 86 Ohio App.3d at 526.
 {¶ 47} Whatever the merits of the decision in Tanker may be, we find that the case before us is clearly distinguishable from that one. In this case, the release in question contains a provision stating that appellant "HEREBY RELEASES, WAIVES, DISCHARGES, AND COVENANTS NOT TO SUE" a number of parties, including appellees, "FOR ALL LOSS OR DAMAGE" incurred by appellant. The release in this case concludes by stating that the undersigneds "INTEND MY SIGNATURE TO BE A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW." There does not appear to have been similar provisions in the release at issue in Tanker. Another appellate court has distinguished Tanker on this same basis. SeeSwartzentruber v. Wee-K Corp. (1997), 117 Ohio App.3d 420, 427
(noting that there was no express mention in Tanker that the defendants were being "released" from personal injury claims, but that such "release" language was expressly used in the contract at issue in the case before the court.)
 {¶ 48} Appellant's third argument is that the area of the racing track in which his accident occurred was not a "restricted area" as that term is defined in the release, and, therefore, the release does not preclude him from bringing suit for the injuries he sustained. We disagree with this argument.
 {¶ 49} The release defines the term "RESTRICTED AREA," in relevant part, "as including but not limited to * * * allwalkways, concessions, and other appurtenant[3] areaswhere any activity related to the Event shall take place[.]" (Emphasis added.)
 {¶ 50} Appellant's accident occurred when he descend a small set of stairways leading off a wooden deck from which G J Kartway's registration window is accessed by the racing track's patrons. This area constitutes a "walkway" or "other appurtenant area" where an "activity related to the Event * * * take[s] place[.]" Therefore, the area where the accident occurred clearly falls within the term "RESTRICTED AREA" as set forth under the release's terms. Accordingly, the release did apply to bar appellant from bringing a lawsuit to recover for the injuries he sustained as a result of his slip and fall.
 {¶ 51} Appellees raise the following assignment of error on cross-appeal:
 {¶ 52} "THE TRIAL COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT TO DEFENDANTS-APPELLEES ADDITIONALLY ON THE BASIS THAT PLAINTIFFS CANNOT ESTABLISH A PRIMA FACIE CLAIM OF NEGLIGENCE."
 {¶ 53} Appellees argue that the trial court erred in failing to award them summary judgment based upon their claim that appellant cannot establish the element of proximate cause regarding his negligence claim. However, this argument has been rendered moot as a result of our disposition of appellant's assignment of error. See App.R. 12(A)(1)(c).
 {¶ 54} Appellant's assignment of error is overruled.
 {¶ 55} The trial court's judgment is affirmed.
Walsh, P.J., and Young, J., concur.
[1] Appellant stated in his deposition that he suffered tears of both of his quadriceps tendons just above the knees, which required surgery to repair. Appellant further stated that he was in a wheelchair as a result of his injuries from the end of April 2002, until July 1, 2002, and did not return to work until August 2002.
[2] Also named in the complaint were appellant's wife, Peggy Webster, who was named as an additional plaintiff, and Jim Adrian, who was named as an additional defendant. Peggy Webster brought a loss of consortium claim against appellees, as a result of appellant's injuries. Adrian was identified in the complaint as one of the owners of G J Kartway and Barnetts Mill Elevator. It appears, however, that Adrian was never successfully served with a copy of the complaint, and it is unclear what Adrian's current status is as to appellant's action.
[3] "Appurtenant" is defined as "annexed or belonging legally to some more important thing," e.g., "a right-of-way [appurtenant] to land or buildings." Webster's Third New International Dictionary (1993) 107.