[Cite as *Whitson v. One Stop Rental Tool & Party*, 2017-Ohio-418.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


| | | |
|---|---|---|
| RICHARD E. WHITSON, et al., | : | |
| | | CASE NO. CA2016-03-004 |
| Plaintiffs-Appellants, | : | |
| | | O P I N I O N |
| | : | 2/6/2017 |
| - vs - | : | |
| | : | |
| ONE STOP RENTAL TOOL | : | |
| AND PARTY, et al., | | |
| | : | |
| Defendants-Appellees. | | |
| | : | |


CIVIL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 14-CV-30237


Elk & Elk Co., Ltd., William P. Campbell and Ryan M. Harrell, 6105 Parkland Boulevard, Suite 200, Mayfield Heights, Ohio 44124, for plaintiffs-appellants

Reminger Co., L.P.A., Michael J. Valentine and Melvin J. Davis, 200 Civic Center Drive, Suite 800, Columbus, Ohio 43215, for defendants-appellees



**M. POWELL, P.J.**

{¶ 1} Plaintiffs-appellants, Richard and Cynthia Whitson, appeal a decision of the Preble County Court of Common Pleas granting summary judgment to defendant-appellee, One Stop Rental Tool and Party ("One Stop"), in a negligence action.

{¶ 2} One Stop is a company that primarily rents tools and equipment. In 2006, One

Stop expanded into event/party rental, including bounce house rental, as a way to diversify its business. In the spring of 2012, the Whitsons rented an inflatable bounce house from One Stop. They had rented the same bounce house from One Stop two years earlier. The bounce house weighs approximately 400-450 pounds and comes packed in a vinyl bag that is approximately four feet in diameter and six and one-half feet long. The bag has a strap on the bottom and a cinch strap at the top to keep the bag closed. On April 27, 2012, Richard went to One Stop to pick up the bounce house. Richard watched three One Stop employees load the bounce house into the back of his truck.

{¶ 3} As relevant to this appeal, Richard signed two documents in connection with the rental of the bounce house from One Stop, to wit: a Rental Contract and a Rental Agreement, Release, and Acknowledgment of Risks. Included within the terms and conditions of the Rental Contract was the following "Hold Harmless Clause:"

> HOLD HARMLESS AGREEMENT. Customer agrees to assume the risks of, and hold Dealer harmless for, property damage and personal injuries, including death and dismemberment, caused by the equipment and/or arising out of Dealer's negligence.

{¶ 4} In turn, the Rental Agreement, Release, and Acknowledgment of Risks ("Release") provided, in relevant part, that

> I understand and acknowledge that the activity to be engaged in through my rental of an inflatable, interactive amusement device, brings with it both known and unanticipated risks to guests, my invitees, and myself. Those risks include, but are not limited to fallings, slipping, crashing, and colliding and could result in injury, illness, disease, emotional distress, death and/or property damage to myself or my guests and invitees.
>
> I voluntarily release, indemnify, hold harmless and discharge One Stop Tool Rental, Inc. from any and all liability claims, demands, actions or rights of actions, whether personal to me or to a third party which are related to[,] arise out of or are in any way connected with my rental of the unit, including those allegedly attribute[d] to negligent acts or omissions. I agree to reimburse any reasonable attorney's fees and costs which may be incurred by One Stop Rental Tool Rental, Inc. in the defense

of any such liability claim, demand, action or right of action.

Although afforded the opportunity, Richard did not read either document before signing them. Deposition testimony indicates that the Rental Contract, which includes the Hold Harmless Clause, is the standard contract One Stop uses whenever a customer rents tools, equipment, or a bounce house, whereas the Release is used solely for the rental of bounce houses.

{¶ 5} Upon arriving home, Richard undertook to unload the bounce house from his truck by himself, even though there were several adults at his house to assist him. Richard first unsuccessfully tried to push the bounce house out of the bed of his truck. He then attempted to unload the house by pulling the bottom strap of the bag. While doing so, the strap broke and Richard fell out of the back of his truck onto the ground. Richard sustained serious injuries incident to the fall.

{¶ 6} On April 14, 2014, Richard and his wife, Cynthia, filed a complaint against One Stop alleging claims of negligence and loss of consortium. The complaint also sought an award of punitive damages for One Stop's alleged malicious conduct in disregarding the probability Richard would be injured in the manner detailed above. One Stop moved for summary judgment, arguing the Whitsons' claims were barred by the Hold Harmless Clause and Release. One Stop further argued Richard was not entitled to an award of punitive damages because One Stop did not act with actual malice. The Whitsons filed a memorandum in opposition to One Stop's motion for summary judgment.

{¶ 7} On March 18, 2016, the trial court granted summary judgment to One Stop on the negligence and punitive damages claims but denied the motion with regard to Cynthia's loss of consortium claim. Regarding Richard's negligence claim, the trial court found that although there was a genuine issue of material fact as to whether One Stop was negligent in failing to notice a problem with the condition of the bag and straps, the claim was barred by the Hold Harmless Clause and Release:

The evidence before the Court clearly establishes that [Richard] voluntarily executed the releases and, even though he did not read them, that he had ample opportunity to read same.

When the Court examines the language of the releases, the Court finds that they are clear and unambiguous. As stated above, in one of the releases the customer agrees to assume the risks of, and hold One Stop harmless for, any damage or injury caused by the equipment and/or arising out of One Stop's negligence.

Further, [Richard] acknowledged that rental of such equipment brings with it both known and unanticipated risks to guests and to himself (the customer). The release again is clear and unambiguous, and is broad enough to include the risks involved in moving the bag and bounce house, removing same from the bag, inflation of the house, and the use thereof and the steps necessary in deflating it and returning it to the dealer.

{¶ 8} The Whitsons now appeal, raising two assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS/APPELLEES ON THE BASIS OF THE ENFORCEABILITY OF THE PURPORTED LIABILITY RELEASES.

{¶ 11} The Whitsons argue that the trial court erred in granting summary judgment to One Stop on the negligence claim on the basis of the Hold Harmless Clause and Release. The Whitsons generally assert that both releases are unenforceable because they are ambiguous and there exists a genuine issue of material fact regarding the parties' intentions in executing the releases.

{¶ 12} An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently and without deference to the decision of the trial court. *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, ¶ 9 (12th Dist.). Summary judgment is proper when no genuine issue as to any material fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion

adverse to the nonmoving party, construing the evidence most strongly in that party's favor. *See* Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 13} The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once this burden is met, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must set forth specific facts showing there is some genuine issue of material fact yet remaining for the trial court to resolve. *Id.*; Civ.R. 56(E). Summary judgment is proper if the nonmoving party fails to set forth such facts. *Puhl v. U.S. Bank, N.A.*, 12th Dist. Butler No. CA2014-08-171, 2015-Ohio-2083, ¶ 13. In determining whether a genuine issue of material fact exists, the court must answer the following inquiry: "Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law?" *Wilson v. Maple*, 12th Dist. Clermont No. CA2005-08-075, 2006-Ohio-3536, ¶ 18.

{¶ 14} Contract clauses that relieve a party from its own negligence, while generally upheld, are not favored by the law and are to be strictly construed. *Hague v. Summit Acres Skilled Nursing & Rehab.*, 7th Dist. Noble No. 09 NO 364, 2010-Ohio-6404, ¶ 20; *Glaspell v. Ohio Edison Co.*, 29 Ohio St.3d 44, 46-47 (1987). Consequently, in order to be enforceable, exculpatory clauses must be expressed in terms that are clear and unequivocal. *Swartzentruber v. Wee-K Corp.*, 117 Ohio App.3d 420, 424 (4th Dist.1997). When the language of the exculpatory clause is ambiguous or too general, the intent of the parties is a factual matter for the jury. *Hague* at ¶ 21.

{¶ 15} In determining whether an exculpatory clause clearly and unequivocally releases a party from liability for negligence, "[t]he pivotal inquiry is whether it is clear from the general terms of the entire contract, considered in light of what an ordinary prudent and knowledgeable party of the same class would understand, that the proprietor is to be relieved

from liability for its own negligence." *Swartzentruber* at 425; *Hague* at ¶ 22. Courts generally enforce releases of future tort liability where "the intent of the parties, with regard to exactly what kind of liability and what person and/or entities are being released, is stated in clear and unambiguous terms." *Hague* at ¶ 20; *Geczi v. Lifetime Fitness*, 10th Dist. Franklin No. 11AP-950, 2012-Ohio-2948, ¶ 18.

{¶ 16} Initially, we note that the Hold Harmless Clause and the Release are contained in separate documents and are independent clauses. On appeal, the Whitsons argue the trial court erred in granting summary judgment to One Stop on the basis of the Hold Harmless Clause because the latter is not a release from liability and is instead an indemnification clause. One Stop asserts that the Whitsons failed to raise these arguments in the trial court, and therefore, have waived these arguments for purposes of appeal.

{¶ 17} It is well-settled that a party may not raise for the first time on appeal any issue or error that the party could have called to the trial court's attention at a time when the trial court could have ruled on the issue, or corrected the error, or avoided the error altogether. *Webster v. G & J Kartway*, 12th Dist. Preble No. CA2005-06-011, 2006-Ohio-881, ¶ 24. This principle applies to summary judgment proceedings. *Id.* Although application of this principle does not alleviate the moving party from carrying its burden on summary judgment, it does prohibit the party in appealing the judgment from advancing new theories or raising new issues in order to secure reversal. *Id.* at ¶ 25.

{¶ 18} We have reviewed the record and find that the Whitsons did not raise these arguments in their memorandum in opposition to One Stop's motion for summary judgment. In fact, the Whitsons did not make *any* argument regarding the Hold Harmless Clause in the summary judgment proceedings. Because the Whitsons did not raise in the trial court the arguments they are now raising on appeal regarding the Hold Harmless Clause, they have waived these arguments for purposes of appeal. *Webster* at ¶ 26. Appellate courts review

summary judgment decisions de novo but the parties are not given a second chance to raise arguments that they should have raised below. *Estes v. Robbins Lumber, L.L.C.*, 12th Dist. Clermont No. CA2016-02-011, 2016-Ohio-8231, ¶ 24.

{¶ 19} Upon reviewing the evidence submitted by the parties, we find that One Stop met its initial burden of demonstrating there is no genuine issue of material fact as to whether Richard's negligence claim is barred by the Hold Harmless Clause.

{¶ 20} The Hold Harmless Clause provides that Richard agreed to hold One Stop harmless for "personal injuries * * * caused by the equipment and/or arising out of [One Stop's] negligence." The Hold Harmless Clause does not restrict its application as to person, and there is no reason why it should not apply to Richard and his injuries. The Hold Harmless Clause is phrased in simple, straightforward language and unambiguously identifies the liability (i.e., negligence) and entity (i.e., One Stop) included within its scope. Because the Hold Harmless Clause is separate and independent from the Release, the Whitsons' argument that the contextual language surrounding the Release renders the Release ambiguous, does not apply to the Hold Harmless Clause. As stated above, the Whitsons did not make any argument or submit any evidence in their memorandum in opposition to One Stop's motion for summary judgment relating to the Hold Harmless Clause, and therefore failed to meet their reciprocal burden. The trial court, therefore, did not err in granting summary judgment to One Stop on the negligence claim on the basis of the Hold Harmless Clause. Civ.R. 56(E); *Puhl*, 2015-Ohio-2083.

{¶ 21} The Whitsons also argue the trial court erred in granting summary judgment to One Stop on the basis of the Release. The trial court's conclusion regarding the Release simply provided an alternative basis for the trial court's grant of summary judgment. We, therefore, need not address this issue given our prior conclusion that the trial court properly granted summary judgment to One Stop on the basis of the Hold Harmless Clause. The trial

court's ultimate decision to grant summary judgment to One Stop with regard to Richard's negligence claim was correct.

{¶ 22} The Whitsons' first assignment of error is overruled.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS/APPELLEES ON PLAINTIFFS/APPELLANTS' CLAIM FOR PUNITIVE DAMAGES.

{¶ 25} The Whitsons argue the trial court erred in granting summary judgment to One Stop on the issue of punitive damages. The trial court granted summary judgment to One Stop, finding there was no evidence of actual malice: "There is no evidence from which a finder of fact could find a state of mind characterized by hatred, ill will or a spirit of revenge, or a conscious disregard for the rights and safety of others." The Whitsons assert that based upon the deposition testimony of One Stop employees that they were aware of the high risk of harm that a failure to inspect the bag could create, that they were aware of the risk of injury from using the bottom strap when attempting to move or unload the bounce house, and that no warnings or instructions were given to customers as to how to move or unload the house, a question of material fact exists as to whether One Stop acted with a conscious disregard when it "failed to reasonably [inspect] the bag for a known hazard and knowingly rented a bag that had not undergone reasonable inspection."

{¶ 26} In Ohio, an award of punitive damages is available only upon a finding of actual malice. *Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470, 473 (1991). Actual malice for these purposes is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. *Preston v. Murty*, 32 Ohio St.3d 334, 335 (1987). Something more than mere negligence is

always required before an award of punitive damages may be made. *Id.* at 335. A possibility or even probability of harm is not enough as that requirement would place the act in the realm of negligence. *Id.* at 336. Before submitting the issue of punitive damages to a jury, a trial court must review the evidence to determine if reasonable minds can differ as to whether the party was aware his or her act had a great probability of causing substantial harm. *Id.* Furthermore, the court must determine that sufficient evidence is presented revealing that the party consciously disregarded the injured party's rights or safety. *Id.*

{¶ 27} We find that the trial court did not err in granting summary judgment to One Stop on the issue of punitive damages. In his deposition, Richard testified he had no evidence that One Stop knew or was aware there was a defect or any type of problem regarding the bottom strap when he picked up the bounce house. In their depositions, One Stop employees testified that before the April 27, 2012 incident, they did not notice any problem with the bottom strap, they never experienced any problems with the strap at issue and did not experience problems with straps in general, they never received customer complaints regarding straps in the seven years One Stop has been renting bounce houses, and One Stop inspections of the bag did not uncover problems with its straps.

{¶ 28} The trial court therefore did not err in finding there was no genuine issue of material fact as to whether One Stop acted with actual malice when it rented the bounce house to the Whitsons. One Stop's general acknowledgment of a risk of injury from using the bottom strap to move or unload the bounce house does not create a genuine issue of material fact that it acted with a conscious disregard for the rights and safety of Richard resulting in a great probability of causing substantial harm. *Preston*, 32 Ohio St.3d at 336.

{¶ 29} The Whitsons' second assignment of error is overruled.

{¶ 30} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.