[Cite as *Embassy Healthcare v. Bell*, 2017-Ohio-1499.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


EMBASSY HEALTHCARE,                    :

    Plaintiff-Appellant,              :          CASE NO.   CA2016-08-072

                                      :              O P I N I O N
  - vs -                                              4/24/2017

                                      :

CORA SUE BELL,                         :

    Defendant-Appellee.               :


CIVIL APPEAL FROM FRANKLIN MUNICIPAL COURT
Case No. 15-07-CVF-0275

Weltman, Weinberg & Reis Co., L.P.A., Daniel A. Friedlander, 323 West Lakeside Avenue, Suite 200, Cleveland, Ohio 44113, for plaintiff-appellant

Miriam H. Sheline, Pro Seniors, Inc., 7162 Reading Road, Suite 1150, Cincinnati, Ohio 45237, for defendant-appellee

**HENDRICKSON, P.J.**

{¶ 1} Plaintiff-appellant, Embassy Healthcare, appeals from a summary judgment decision rendered by the Franklin Municipal Court in favor of defendant-appellee, Cora Sue Bell.  For the reasons detailed below, we reverse.

{¶ 2} Embassy operates a nursing home where Bell's late husband, Robert, stayed beginning in early 2014.  Robert passed away in May 2014 and no estate was opened.  Over

six months after his death, Embassy issued Bell a letter asking for payment from Robert's estate for unpaid nursing services. The letter was addressed to "The Estate of: ROBERT BELL, c/o CORA BELL, Fiduciary" and began "Dear Personal Representative of the Estate."[1]

{¶ 3} In June 2015, Embassy sued Bell, asserting a claim pursuant to R.C. 3103.03, i.e., Ohio's necessaries statute. Embassy alleged in the complaint that it provided Robert with $1,678 in unpaid nursing services. The complaint further alleged that Bell was obligated to reimburse it for Robert's debt under the necessaries statute.

{¶ 4} After filing her answer, Bell moved for summary judgment and attached her affidavit in support. In the motion, Bell argued that Embassy could not prove certain elements of its claim under the necessaries statute and further, that the claim was time barred by the six-month statute of limitations for filing claims against a decedent's estate.

{¶ 5} To show that Robert could support himself and had the ability to pay Embassy for its nursing services – a fact which could potentially defeat Embassy's necessaries claim – Bell included averments in her summary judgment affidavit related to Robert's Medicare insurance policies in effect prior to his death. Bell averred that her late husband had Medicare coverage, including a supplemental policy that paid for 100 days of skilled nursing care. Bell further averred that at as of April 2014, Robert had 54 days of coverage for skilled nursing remaining.

{¶ 6} Embassy filed a responsive memorandum and included an affidavit of its custodian of records. Through the affidavit, the custodian authenticated billing records and Robert's admission packet. A portion of the packet reflecting Robert's financial resources appeared to show that his sources of income were social security and a pension.

---

1. The dissent notes that language in this letter informed Bell that she was not personally responsible for payment. However, Embassy directed the letter to Bell in her assumed role as fiduciary of her late husband's estate and not individually.

{¶ 7}   A magistrate issued a decision recommending that the court find in favor of Bell and dismiss Embassy's complaint.  The magistrate reasoned that Embassy failed to offer any evidence demonstrating that Robert was unable to support himself and could not pay for the services Embassy provided.

{¶ 8}   Embassy filed objections, which the trial court overruled.  In its decision, the trial court's basis for finding in favor of Bell differed from that of the magistrate.  The court found that Robert's alleged debt to Embassy became a debt of Robert's estate upon his death.  The court then concluded that Embassy was time barred from recovering the alleged debt because it failed to present a claim to Robert's estate, or open an estate for the purposes of doing so, within the six-month limitations period imposed by R.C. 2117.06.  Effectively, the court found that Embassy was required to pursue its claim against Robert's estate before it could attempt to recover against Bell under R.C. 3103.03.

{¶ 9}   Embassy presents one assignment of error on appeal:

{¶ 10}   THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶ 11}   Embassy argues that the court erred when it concluded that Embassy's failure to present a claim against Robert's estate within the time requirements set forth in R.C. 2117.06 preclude it from asserting a R.C. 3103.03 necessaries claim against Bell for the same debt. Embassy further argues that Bell did not support her summary judgment motion with facts sufficient to demonstrate the absence of a genuine issue of fact with respect to Robert's ability to support himself, and thus, it had no reciprocal burden under Civ.R. 56(E) to produce genuine issues of fact for trial.  We address each argument in turn.

{¶ 12}   This court reviews summary judgment decisions de novo, which means that we review the trial court's judgment independently and without deference to its determinations and use the same standard in our review that the trial court should have

employed. *Ludwigsen v. Lakeside Plaza, L.L.C.*, 12th Dist. Madison No. CA2014-03-008, 2014-Ohio-5493, ¶ 8. Summary judgment is appropriate under Civ.R. 56(C) when (1) there are no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) when all evidence is construed most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370 (1998). "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

{¶ 13} The movant bears the initial burden of informing the court of the basis of the motion and demonstrating the absence of a genuine issue of material fact. *Ludwigsen* at ¶ 9. Once the moving party meets this burden, the nonmoving party may not rest on the allegations of his pleadings but must set forth specific facts showing a genuine issue for trial. *Id.* Civ.R. 56(E).

Presentment of claims against estates and R.C. 3103.03

{¶ 14} R.C. 3103.03, the necessaries statute, provides in pertinent part:

> (A) Each married person must support the person's self and spouse out of the person's property or by the person's labor. If a married person is unable to do so, the spouse of the married person must assist in the support so far as the spouse is able.
>
> * * *
>
> (C) If a married person neglects to support the person's spouse in accordance with this section, any other person, in good faith, may supply the spouse with necessaries for the support of the spouse and recover the reasonable value of the necessaries supplied from the married person who neglected to support the spouse unless the spouse abandons that person without

cause.

{¶ 14} R.C. 2117.06 governs the method of asserting claims against a decedent's estate. In relevant part, it provides:

> (A) All creditors having claims *against an estate*, including claims arising out of contract * * * shall present their claims in one of the following manners:* * *
>
> (B) * * * a claim that is not presented within six months after the death of the decedent shall be forever barred as to all parties, including, but not limited to, devisees, legatees, and distributees. No payment shall be made on the claim and no action shall be maintained on the claim * * *.

(Emphasis added.)

{¶ 15} It is undisputed that Embassy's attorney presented Bell, as the fiduciary or personal representative of her husband's estate, with a letter requesting the balance of Robert's Embassy account in the amount of $1,678. It was Bell's argument below that this letter was used to present a claim against her late husband's estate and Embassy had an obligation to timely seek the balance due from her husband's estate before pursuing a claim against her individually. Thus, since the letter was not presented within six months of her husband's death, Embassy's claim is now barred pursuant to R.C. 2117.06. On appeal, Embassy argues that the trial court erred by denying it's claim based upon its alleged failure to comply with R.C. 2117.06 prior to pursuing collection from Bell under the necessaries statute, R.C. 3103.03.

{¶ 16} We agree with Embassy that the trial court erred in its conclusion that the failure to present a claim against an estate within the time requirements set forth in R.C. 2117.06 precludes a creditor from pursuing a claim for necessaries against a decedent debtor's spouse under R.C. 3103.03. The plain language of R.C. 2117.06 makes clear that it is applicable only to claims against an estate. Embassy's claim under R.C. 3103.03 is not a claim against Robert's estate but is a personal claim against Bell.

{¶ 17} R.C. 3101.03 creates a personal and independent cause of action against a spouse who neglects to pay for the other spouse's "necessaries." R.C. 3103.03 makes no reference to R.C. 2117.06. Nor can we reasonably interpret the claim to be dependent upon the timely presentation of a separate claim against the debtor spouse's estate. If a creditor can prove every necessary element under R.C. 3103.03, it can maintain a cause of action for the recovery of "necessaries" against a debtor's spouse regardless of whether it timely presented a claim against the deceased debtor's estate. However, the creditor pursuing a necessaries claim must prove that a deceased debtor was unable to support himself. If the creditor cannot prove that element of the claim and fails to timely present a claim against the debtor's estate, it runs the risk of losing the ability to pursue the debt entirely.

{¶ 18} The trial court found that R.C. 2117.06 and R.C. 3103.03 were irreconcilable because the former provides that a claim against an estate is barred after the six-month limitations period "as to all parties, including, but not limited to, devisees, legatees, and distributees." We do not agree that the two statutes are irreconcilable. R.C. 2117.06 precludes all creditors – whether they are seeking recovery of necessaries or otherwise – from presenting a claim against an estate to satisfy a decedent's inter vivos debt after the six-month period under R.C. 2117.06 has expired.[2] We interpret the "all parties" language to mean that the beneficiaries of the estate also receive estate assets free of any claim by a creditor. However, and as stated previously, a claim brought under R.C. 3103.03 is not a claim against an estate but is a separate statutory cause of action against a debtor's spouse. A creditor's right to pursue such a claim does not depend on whether the debtor is living or whether an estate exists. In the context of this case, a claim brought under the necessaries statute is simply not within the purview of R.C. 2117.06. *See also Cleveland Metropolitan*

---

2. There is a statutory exception to the six-month limitation which is irrelevant for purposes of this appeal.

*Gen. Hosp. v. Firestone*, 8th Dist. Cuyahoga No. 40967, 1980 Ohio App. LEXIS 12813, *5-11 (Aug. 14, 1980) (concluding that the failure to present a claim within the time requirements of R.C. 2117.06 did not bar an action for medical expenses under R.C. 3103.03).

<u>Summary judgment evidence of Robert's ability to support himself</u>

{¶ 19}  To prevail on its claim against Bell at trial, Embassy would be required to prove, *inter alia*, that Robert was unable to support himself and pay Embassy for its services or that Robert's estate was unable pay for the services.  See *Home Helpers/Direct Link v. St. Pierre*, 196 Ohio App.3d 480, 2011-Ohio-4909, ¶ 16 (12th Dist.2011).  Bell argues that she supported her summary judgment motion with evidence demonstrating that Robert had Medicare insurance that should have covered the cost of Embassy's nursing services.  Bell contends that when she submitted this evidence in moving for summary judgment, the burden shifted to Embassy to produce a genuine issue of fact indicating that Robert could not support himself.  According to Bell, Embassy did not meet its reciprocal evidentiary burden.  Therefore, she was entitled to summary judgment.

{¶ 20}  Bell's summary judgment evidence on the issue of Robert's ability to support himself consisted of these two averments in her affidavit:

> 6.  My husband had Medicare coverage and a Medicare supplemental policy which covered in full 100 days of skilled nursing care.
>
> 7.  As of April 5, 2014, my husband had 54 days of skilled nursing care coverage remaining * * *."

Bell's affidavit also authenticated an exhibit consisting of Medicare documents detailing how Robert's policy paid for his earlier care at Embassy's nursing facility and how many days of skilled nursing coverage he had remaining.

{¶ 21}  After reviewing the summary judgment record, this court concludes Bell's affidavit and the supporting documentation failed to demonstrate the absence of a genuine

- 7 -

issue of fact with respect to Robert's ability to support himself or pay Embassy. Bell's summary judgment evidence indicates that Robert *may* have had a means of paying Embassy and thus *may* have been able to support himself. However, her averments and the documentary evidence did not establish: (1) what specific medical services Embassy provided to Robert for which it now sought payment, (2) whether Robert's Medicare policy would have covered those specific services, and (3) whether a portion of the costs for Embassy's services may have been Robert's responsibility through coinsurance or copays. In this last regard, some of the Medicare documents appear to indicate that Robert had a coinsurance obligation.

{¶ 22} Furthermore, affidavits in support of summary judgment must be made on personal knowledge, "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Civ.R. 56(E). The averments in Bell's affidavit lead us to believe that she simply reviewed Robert's Medicare documents in her possession to reach the conclusion that his skilled nursing coverage would pay for Embassy's services. The averments do not indicate that Bell has personal knowledge of how Medicare would have responded to Embassy's claim for services. Accordingly, the implication of Bell's affidavit, i.e., that Robert had insurance coverage for the alleged debt to Embassy, is conclusory and insufficient for summary judgment purposes. *See HSBC Mortg. Servs. v. Williams*, 12th Dist. Butler No. CA2013-09-174, 2014-Ohio-3778, ¶ 12-17.

{¶ 23} The only conclusion we can reach from Bell's summary judgment evidence is that Robert had insurance policies through Medicare that may have covered Embassy's nursing costs. Based upon this evidence, Bell – as the moving party – did not "affirmatively demonstrate" that Embassy could not establish the inability to support element of its necessaries claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

{¶ 24} Bell is correct that Embassy also did not establish through its rebuttal evidence that Robert lacked the ability to pay. However, because Bell failed to meet her initial burden under Civ.R. 56 to show the absence of a genuine issue of fact, Embassy was not required to file rebuttal evidence to survive summary judgment. *Id. See also Polivka v. Cox*, 10th Dist. Franklin No. 01AP-1023, 2002-Ohio-2420 (reversing summary judgment where the defendant's affidavit in support failed to sufficiently demonstrate the absence of a genuine issue of material fact).

{¶ 25} Accordingly, we find merit in Embassy's assignment of error. We reverse the decision of the trial court granting summary judgment in favor of Bell. The case is remanded for further proceedings consistent with this Opinion.

M. POWELL, J., concurs.

PIPER, J., dissents.

**PIPER, J., dissenting.**

{¶ 26} I respectfully dissent since the trial court properly granted summary judgment in favor of Cora Bell. No genuine issue of material fact remains for litigation because Embassy Healthcare did not produce any supporting evidence suggesting that Robert Bell was unable to support himself regarding the services he received at the health care facility.

**Civil Rule 56's Shifting Burdens**

{¶ 27} The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once this burden is met, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must supply evidentiary materials setting forth *specific facts* showing there is some genuine issue of material fact yet

remaining for the trial court to resolve. *Whitson v. One Stop Rental Tool & Party*, 12th Dist. Preble No. CA2016-03-004, 2017-Ohio-418, ¶ 13.

{¶ 28} Summary judgment is proper if the nonmoving party fails to supply evidentiary materials setting forth such facts. *Puhl v. U.S. Bank, N.A.*, 12th Dist. Butler No. CA2014-08-171, 2015-Ohio-2083, ¶ 13. In determining whether a genuine issue of material fact exists, the court must answer the following inquiry: "Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law?" *Wilson v. Maple*, 12th Dist. Clermont No. CA2005-08-075, 2006-Ohio-536, ¶ 18.

**Requirement of Inability to Pay**

{¶ 29} R.C. 3103.03(A) and (C) require several elements before a spouse is responsible to pay for the necessities of his or her spouse. That means that Embassy Healthcare would have to prove several elements before it could show it was entitled to payment from Cora. Those elements applied to this case would mean that: (1) Robert and Cora were married; (2) Robert was unable to provide payment for his necessary expenses; (3) Cora did not provide payment for Robert's expenses; (4) the expenses claimed by Embassy Healthcare for Robert were necessary; (5) the value of the necessaries was reasonable; and (6) Robert had not abandoned Cora without cause.

{¶ 30} Through affidavits and evidentiary material, Cora demonstrated that Embassy Healthcare cannot prove the second element. Embassy Healthcare, in turn, did not produce *any* evidentiary materials showing that Robert had an inability to provide for his expenses. In fact, the majority, itself, recognizes that "Bell is correct that Embassy also did not establish through its rebuttal evidence that Robert lacked the ability to pay." Simply stated, there is *no evidence* in the record that Robert was unable to have his necessary expenses paid by his insurance as had been done routinely in the past. Thus, Embassy Healthcare's claim must

- 10 -

fail, and Cora is entitled to judgment as a matter of law.

{¶ 31} In support of her motion for summary judgment, Cora provided uncontroverted evidence that Robert had Medicare coverage, as well as a Medicare supplemental policy that covered 100 days of skilled nursing care. Cora also provided evidence that Robert used over 40 days of that covered care, and that insurance paid the cost of those services.

{¶ 32} Specifically, an invoice attached to Cora's motion for summary judgment clearly indicates that Robert's insurance provider paid claims of $3,192 and $11,221.69 for Robert's nursing home stay. Some of these expenses were reimbursed to Embassy Healthcare for services it provided. Cora also provided evidence that Robert had over 50 days remaining of the 100 allotted days still available to him. Thus, the care provided to Robert, which admittedly was necessary, was coverable under Robert's insurance policy and was payable if a claim had been timely asserted.

{¶ 33} The majority agrees that Cora's evidence supports her argument that Robert had insurance, which had paid similar claims in the past. The majority concludes that because of the evidence submitted by Cora, her "summary judgment evidence indicates that Robert *may* have had a means of paying Embassy and thus *may* have been able to support himself." (Emphasis sic.) The majority does not assert that Cora's evidence lacked credibility or authenticity, but rather discounts Cora's evidence because it speculates that maybe all of the expenses might not be paid.

{¶ 34} However, there is no evidence submitted by Embassy Healthcare contesting or even challenging Cora's evidence, which she filed to support her assertion that Robert's charges for skilled nursing care would have been paid in the same manner as such charges from Embassy Healthcare had been paid routinely in the past. The majority fails to examine, discuss, or otherwise rely upon any evidence submitted by Embassy Healthcare and only

uses conjecture that Robert's expenses might be uncovered expenses.[3]

**{¶ 35}** Instead, the facts and evidence presented by Cora are undisputed: (1) Robert had health insurance; (2) Robert had a supplemental policy that covered 100 days of skilled nursing care; (3) Robert used 40 days of such care in the past; (4) Robert's insurance paid Embassy Healthcare for such services; (5) Robert had over 50 days remaining of the allotted 100 days; (6) Embassy Healthcare charged Robert for the services he obtained while utilizing Embassy's skilled nursing care. Again, these facts are completely uncontroverted, and clearly establish that Robert consistently had his medical expenses paid and Embassy Healthcare simply quit processing claims for medical expenses due to Robert's death.

**{¶ 36}** Rather than dispute the undisputable, or attempt to demonstrate why there were unresolved issues of material fact, Embassy Healthcare chose not to put forth a single piece of evidence to even suggest that Robert's insurance would not cover the charges, or that he had an inability to pay Embassy Healthcare's claim for expenses. In addition to excusing Embassy Healthcare from its burden, the majority advances an unsupported argument as to the possibility of a co-pay for the reason why Cora should be denied judgment as a matter of law – while at the same time recognizing that Embassy Healthcare did not have a single piece of evidence to establish that Robert had an inability to have his necessary expenses paid.

**{¶ 37}** Moreover, the majority asserts that Cora's evidence should be discounted because it was not based on personal knowledge. I disagree. Cora's affidavit clearly demonstrates that she was familiar with her husband's medical issues, what had occurred in the past regarding payment of nursing care, and what benefit payments still remained. To

---

3. The majority struggles with attempting to weigh Cora's evidence, yet it is undeniable there is *no* evidence from Embassy Healthcare to challenge the evidence submitted by Cora. Embassy Healthcare's bare assertions are insufficient to survive Cora's motion for summary judgment.

insinuate that Cora lacked personal knowledge of the medical issues and finances of her husband is dubious where Cora's affidavit was clearly supported by documentation that proved Robert's entitlement to insurance coverage, which specifically had paid Embassy Healthcare in the past.[4]

{¶ 38} Pursuant to the evidentiary materials presented by Cora, Robert did not have an inability to provide payment for the services received. If a claim had been processed, all evidence is that Robert, through an opened fiduciary estate, would have processed Embassy Health's claims for expenses and Robert would have been responsible for payment via his insurance. Thus, Cora carried her initial burden of informing the court of the basis for her motion.

{¶ 39} Once this burden was met, Embassy Healthcare could not rest upon the mere allegations or denials of its pleadings, but must have set forth evidentiary materials supplying *specific facts* demonstrating that there was some genuine issue of material fact yet remaining for the trial court to resolve. It did not do so – a fact expressly recognized within the majority's opinion.

**Burden Shifted, But Unmet**

{¶ 40} In responding to Cora's evidentiary materials, the majority recognizes that Cora is "correct that Embassy also did not establish through its rebuttal evidence that Robert lacked the ability to pay." The majority's recognition of this fact is because Embassy Healthcare submitted no evidence in response to Cora's evidentiary materials. Therefore, the record does not contain any evidence submitted by Embassy Healthcare that Robert was unable to be financially responsible for the services he received. Embassy Healthcare did

---

4. At oral argument, Embassy Healthcare conceded it did not move the trial court to strike Cora's affidavit for the lack of personal knowledge. It is improper to rely on arguments not asserted below since they are deemed waived. *Webster v. G & J Kartway*, 12th Dist. Preble No. CA2005-06-011, 2006-Ohio-881. Presumably, Embassy Healthcare did not move to strike Cora's affidavit because her personal knowledge was evident.

not seek payment from Robert's insurance provider, and never submitted a creditor's claim against Robert – something it was entitled to do after Robert's death.[5]  Instead, Embassy Healthcare only *argued* that it was reasonable to stop submitting their claims to Robert's insurance carrier because of his death.  Rather than submit evidence to support its reciprocal burden that genuine issues remained in regard to Robert's inability to have his bills paid, Embassy Healthcare essentially argued that Robert is unable to provide payment because he is deceased and, although discovered beyond the timeframe for the payment of claims, Robert did not have an estate with assets from which to seek payment.[6]

{¶ 41}  Embassy Healthcare simply did not submit any evidence that Robert was unable to have his expenses paid.  Similarly, Embassy Healthcare did not present any evidence suggesting that if it had processed a claim for expenses, it would not have been paid.  Nor did Embassy Healthcare present any evidence that even remotely suggested that the expenses might not have been paid.  Like the plaintiff in our precedent, *Puhl v. U.S. Bank, N.A.*, 2015-Ohio-2083, Embassy Healthcare failed to meet its burden on summary judgment.

{¶ 42}  The majority seems to operate under the impression that the necessaries statute, R.C. 3103.03(A) and (C) requires the spouse, Cora in this case, to prove that the deceased spouse, Robert in this case, had the actual ability to pay his necessary expenses.

---

5. Without some action toward establishing an inability to provide payment, there is no genuine issue of material fact existing, and Cora is entitled to judgment as a matter of law.  As the trial court correctly pointed out, Embassy Healthcare submitted a claim to Cora, believing an estate had been opened for the payment of claims. Embassy Healthcare's conduct demonstrates it knew Robert had an ability to pay through his health insurance coverage as had been done in the past.  Yet, there was no estate opened, and the attempted claim was submitted beyond the deadline in which claims would be accepted and paid.

6. While Robert may not have had "assets" that required an estate, it is undisputed that Robert had insurance. A request for the appointment of a fiduciary could have been made solely for the purposes of handling any potential insurance claims, and Embassy Healthcare knew Robert had insurance, which had paid its claims in the past.  However, and other than a letter to Cora attempting to make an untimely estate claim, there are no evidentiary materials asserting that Embassy Healthcare requested a fiduciary be appointed for purposes of processing payment for Embassy Healthcare's potential claim. Despite the letter being addressed to Cora Bell in her fiduciary capacity, Embassy informed her that she would not be personally responsible for payment.

In fact, after Cora established Robert's insurance had paid Embassy Healthcare's expenses in the past, the claimant, here Embassy Healthcare, had the responsibility to support with some evidentiary material its suggestion that the deceased spouse, Robert, had *an inability* to have his necessary expenses paid. Embassy Healthcare simply cannot rely on the bare assertions in its complaint. I would, therefore, find that Cora is entitled to judgment as a matter of law and affirm the decision of the trial court. Thus, I must respectfully dissent from the majority's analysis and judgment because the trial court's result, as a matter of law, was proper, reasonable, and appropriate in granting summary judgment to Cora Bell.