PIPER, J., dissenting.
{¶ 27} I respectfully dissent since the trial court properly granted summary judgment in favor of Cora Bell. No genuine issue of material fact remains for litigation because Embassy Healthcare did not produce any supporting evidence suggesting that Robert Bell was unable to support himself regarding the services he received at the health care facility.
Civil Rule 56's Shifting Burdens
{¶ 28} The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. Dresher v. Burt , 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Once this burden is met, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must supply evidentiary materials setting forth specific facts showing there is some genuine issue of material fact yet remaining for the trial court to resolve. Whitson v. One Stop Rental Tool & Party , 2017-Ohio-418, 84 N.E.3d 84, ¶ 13.
{¶ 29} Summary judgment is proper if the nonmoving party fails to supply evidentiary materials setting forth such facts. Puhl v. U.S. Bank, N.A. , 2015-Ohio-2083, 34 N.E.3d 530, ¶ 13. In determining whether a genuine issue of material fact exists, the court must answer the following inquiry: "Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law?"
*47 Wilson v. Maple , 12th Dist. Clermont No. CA2005-08-075, 2006-Ohio-3536, 2006 WL 1880505, ¶ 18.
Requirement of Inability to Pay
{¶ 30} R.C. 3103.03(A) and (C) require several elements before a spouse is responsible to pay for the necessities of his or her spouse. That means that Embassy Healthcare would have to prove several elements before it could show it was entitled to payment from Cora. Those elements applied to this case would mean that: (1) Robert and Cora were married; (2) Robert was unable to provide payment for his necessary expenses; (3) Cora did not provide payment for Robert's expenses; (4) the expenses claimed by Embassy Healthcare for Robert were necessary; (5) the value of the necessaries was reasonable; and (6) Robert had not abandoned Cora without cause.
{¶ 31} Through affidavits and evidentiary material, Cora demonstrated that Embassy Healthcare cannot prove the second element. Embassy Healthcare, in turn, did not produce any evidentiary materials showing that Robert had an inability to provide for his expenses. In fact, the majority, itself, recognizes that "Bell is correct that Embassy also did not establish through its rebuttal evidence that Robert lacked the ability to pay." Simply stated, there is no evidence in the record that Robert was unable to have his necessary expenses paid by his insurance as had been done routinely in the past. Thus, Embassy Healthcare's claim must fail, and Cora is entitled to judgment as a matter of law.
{¶ 32} In support of her motion for summary judgment, Cora provided uncontroverted evidence that Robert had Medicare coverage, as well as a Medicare supplemental policy that covered 100 days of skilled nursing care. Cora also provided evidence that Robert used over 40 days of that covered care, and that insurance paid the cost of those services.
{¶ 33} Specifically, an invoice attached to Cora's motion for summary judgment clearly indicates that Robert's insurance provider paid claims of $3,192 and $11,221.69 for Robert's nursing home stay. Some of these expenses were reimbursed to Embassy Healthcare for services it provided. Cora also provided evidence that Robert had over 50 days remaining of the 100 allotted days still available to him. Thus, the care provided to Robert, which admittedly was necessary, was coverable under Robert's insurance policy and was payable if a claim had been timely asserted.
{¶ 34} The majority agrees that Cora's evidence supports her argument that Robert had insurance, which had paid similar claims in the past. The majority concludes that because of the evidence submitted by Cora, her "summary judgment evidence indicates that Robert may have had a means of paying Embassy and thus may have been able to support himself." (Emphasis sic.) The majority does not assert that Cora's evidence lacked credibility or authenticity, but rather discounts Cora's evidence because it speculates that maybe all of the expenses might not be paid.
{¶ 35} However, there is no evidence submitted by Embassy Healthcare contesting or even challenging Cora's evidence, which she filed to support her assertion that Robert's charges for skilled nursing care would have been paid in the same manner as such charges from Embassy Healthcare had been paid routinely in the past. The majority fails to examine, discuss, or otherwise rely upon any evidence submitted by Embassy Healthcare and only uses conjecture that Robert's expenses *48 might be uncovered expenses.[3]
{¶ 36} Instead, the facts and evidence presented by Cora are undisputed: (1) Robert had health insurance; (2) Robert had a supplemental policy that covered 100 days of skilled nursing care; (3) Robert used 40 days of such care in the past; (4) Robert's insurance paid Embassy Healthcare for such services; (5) Robert had over 50 days remaining of the allotted 100 days; (6) Embassy Healthcare charged Robert for the services he obtained while utilizing Embassy's skilled nursing care. Again, these facts are completely uncontroverted, and clearly establish that Robert consistently had his medical expenses paid and Embassy Healthcare simply quit processing claims for medical expenses due to Robert's death.
{¶ 37} Rather than dispute the undisputable, or attempt to demonstrate why there were unresolved issues of material fact, Embassy Healthcare chose not to put forth a single piece of evidence to even suggest that Robert's insurance would not cover the charges, or that he had an inability to pay Embassy Healthcare's claim for expenses. In addition to excusing Embassy Healthcare from its burden, the majority advances an unsupported argument as to the possibility of a co-pay for the reason why Cora should be denied judgment as a matter of law-while at the same time recognizing that Embassy Healthcare did not have a single piece of evidence to establish that Robert had an inability to have his necessary expenses paid.
{¶ 38} Moreover, the majority asserts that Cora's evidence should be discounted because it was not based on personal knowledge. I disagree. Cora's affidavit clearly demonstrates that she was familiar with her husband's medical issues, what had occurred in the past regarding payment of nursing care, and what benefit payments still remained. To insinuate that Cora lacked personal knowledge of the medical issues and finances of her husband is dubious where Cora's affidavit was clearly supported by documentation that proved Robert's entitlement to insurance coverage, which specifically had paid Embassy Healthcare in the past.[4]
{¶ 39} Pursuant to the evidentiary materials presented by Cora, Robert did not have an inability to provide payment for the services received. If a claim had been processed, all evidence is that Robert, through an opened fiduciary estate, would have processed Embassy Health's claims for expenses and Robert would have been responsible for payment via his insurance. Thus, Cora carried her initial burden of informing the court of the basis for her motion.
{¶ 40} Once this burden was met, Embassy Healthcare could not rest upon the mere allegations or denials of its pleadings, but must have set forth evidentiary materials supplying specific facts demonstrating that there was some genuine issue of material fact yet remaining for the trial court to resolve. It did not do so-a fact *49 expressly recognized within the majority's opinion.
Burden Shifted, But Unmet
{¶ 41} In responding to Cora's evidentiary materials, the majority recognizes that Cora is "correct that Embassy also did not establish through its rebuttal evidence that Robert lacked the ability to pay." The majority's recognition of this fact is because Embassy Healthcare submitted no evidence in response to Cora's evidentiary materials. Therefore, the record does not contain any evidence submitted by Embassy Healthcare that Robert was unable to be financially responsible for the services he received. Embassy Healthcare did not seek payment from Robert's insurance provider, and never submitted a creditor's claim against Robert-something it was entitled to do after Robert's death.[5] Instead, Embassy Healthcare only argued that it was reasonable to stop submitting their claims to Robert's insurance carrier because of his death. Rather than submit evidence to support its reciprocal burden that genuine issues remained in regard to Robert's inability to have his bills paid, Embassy Healthcare essentially argued that Robert is unable to provide payment because he is deceased and, although discovered beyond the timeframe for the payment of claims, Robert did not have an estate with assets from which to seek payment.[6]
{¶ 42} Embassy Healthcare simply did not submit any evidence that Robert was unable to have his expenses paid. Similarly, Embassy Healthcare did not present any evidence suggesting that if it had processed a claim for expenses, it would not have been paid. Nor did Embassy Healthcare present any evidence that even remotely suggested that the expenses might not have been paid. Like the plaintiff in our precedent, Puhl v. U.S. Bank, N.A. , 2015-Ohio-2083, 34 N.E.3d 530, Embassy Healthcare failed to meet its burden on summary judgment.
{¶ 43} The majority seems to operate under the impression that the necessaries statute, R.C. 3103.03(A) and (C) requires the spouse, Cora in this case, to prove that the deceased spouse, Robert in this case, had the actual ability to pay his necessary expenses. In fact, after Cora established Robert's insurance had paid Embassy Healthcare's expenses in the past, the claimant, here Embassy Healthcare, had the responsibility to support with some evidentiary material its suggestion that the deceased spouse, Robert, had an inability to have his necessary expenses paid. Embassy Healthcare simply cannot rely on *50 the bare assertions in its complaint. I would, therefore, find that Cora is entitled to judgment as a matter of law and affirm the decision of the trial court. Thus, I must respectfully dissent from the majority's analysis and judgment because the trial court's result, as a matter of law, was proper, reasonable, and appropriate in granting summary judgment to Cora Bell.

The majority struggles with attempting to weigh Cora's evidence, yet it is undeniable there is no evidence from Embassy Healthcare to challenge the evidence submitted by Cora. Embassy Healthcare's bare assertions are insufficient to survive Cora's motion for summary judgment.

At oral argument, Embassy Healthcare conceded it did not move the trial court to strike Cora's affidavit for the lack of personal knowledge. It is improper to rely on arguments not asserted below since they are deemed waived. Webster v. G & J Kartway , 12th Dist. Preble No. CA2005-06-011, 2006-Ohio-881, 2006 WL 456794. Presumably, Embassy Healthcare did not move to strike Cora's affidavit because her personal knowledge was evident.

Without some action toward establishing an inability to provide payment, there is no genuine issue of material fact existing, and Cora is entitled to judgment as a matter of law. As the trial court correctly pointed out, Embassy Healthcare submitted a claim to Cora, believing an estate had been opened for the payment of claims. Embassy Healthcare's conduct demonstrates it knew Robert had an ability to pay through his health insurance coverage as had been done in the past. Yet, there was no estate opened, and the attempted claim was submitted beyond the deadline in which claims would be accepted and paid.

While Robert may not have had "assets" that required an estate, it is undisputed that Robert had insurance. A request for the appointment of a fiduciary could have been made solely for the purposes of handling any potential insurance claims, and Embassy Healthcare knew Robert had insurance, which had paid its claims in the past. However, and other than a letter to Cora attempting to make an untimely estate claim, there are no evidentiary materials asserting that Embassy Healthcare requested a fiduciary be appointed for purposes of processing payment for Embassy Healthcare's potential claim. Despite the letter being addressed to Cora Bell in her fiduciary capacity, Embassy informed her that she would not be personally responsible for payment.